<table>
<tr><td>

**UNITED STATES DISTRICT COURT**

</td><td>

**EASTERN DISTRICT OF TEXAS**

</td></tr>
</table>

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:18-CR-46(25) |
| | § | |
| STEPHANIE CHRISTINE HUGHES | § | |

### MEMORANDUM AND ORDER

Pending before the court is Defendant Stephanie Christine Hughes's ("Hughes") Motion for Compassionate Release Persuant [sic] to COVID-19 Compelling and Extraordinary Circumstances Under 18 U.S.C. 3582(c)(1)(A) (#1069), wherein Hughes requests that the court reduce her sentence and immediately release her to home confinement due to the threat of Coronavirus Disease 2019 ("COVID-19") and for caregiver reasons relating to her father.  The Government filed a response in opposition (#1074).  United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny the motion.  Having considered the motion, Probation's recommendation, the Government's response, and the applicable law, the court is of the opinion that the motion should be DENIED.

I.     Background

On November 15, 2018, a federal grand jury in the Eastern District of Texas returned a three-count Fourth Superseding Indictment charging Hughes and twenty-nine (29) others with participating in a Conspiracy to Possess with Intent to Manufacture and Distribute 500 grams or more of Methamphetamine or 50 grams of more of Methamphetamine (Actual) in violation of 21 U.S.C. § 846.  On May 2, 2019, Hughes pleaded guilty to Count 1 of the Fourth Superseding Indictment pursuant to a non-binding plea agreement.  In the Statement of Facts in Support of Plea Agreement, Hughes stipulated that she and others made an agreement to distribute and possess

with the intent to manufacture and distribute at least 15 kilograms but less than 45 kilograms of a mixture or substance containing a detectable amount of methamphetamine or at least 1.5 kilograms but less than 4.5 kilograms of methamphetamine (actual).  On September 13, 2019, the court sentenced Hughes to 235 months' imprisonment, followed by a 5-year term of supervised release.  Hughes previously moved for compassionate release by letter dated May 9, 2020, relying on her alleged need to care for her children and other family members, including her father.  An investigation by Probation revealed that all her family members were receiving appropriate care in her absence, and the court denied her motion on July 15, 2020.  According to Probation, the Bureau of Prisons ("BOP") conducted an evaluation of Hughes's COVID-19 Home Confinement eligibility on May 16, 2020, and denied it based on her Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") score of medium and the insufficient percentage of time she has served on her sentence.  By letter dated July 10, 2020, Hughes now seeks a sentence reduction "base[d] on serious medical reasons" and "caregiver reasons."  The caregiver reasons were fully addressed and rejected by this court's order of July 15, 2020.  Hughes is currently housed at Federal Medical Center Carswell in Fort Worth, Texas ("FMC Carswell").  Her projected release date is February 3, 2035.

II.   <u>Analysis</u>

On December 21, 2018, the President signed the First Step Act of 2018 into law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative

2

rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for [her] release was filed by the BOP); *Slate v. United States*, No. 5:09-CV-00064, 2009 WL 1073640, at *3 (S.D.W.Va. Apr. 21, 2009) ("Absent a motion from the BOP, the Court lacks authority to grant compassionate release."). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d

594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, Hughes must first submit a request to the warden of her facility to move for compassionate release on her behalf and then either exhaust her administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *United States v. Harris*, No. 20-1723, 2020 WL 4048690, at *1 (3d Cir. July 20, 2020); *United States v. Springer*, No. 20-5000, 2020 WL 3989451, at *3 (10th Cir. July 15, 2020) (defendant "was required to request that the BOP file a compassionate-release motion on [her] behalf to initiate [her] administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust [her] administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, Hughes is foreclosed from obtaining relief because she has not submitted a request for compassionate release based on the circumstances raised in the instant motion to the warden of the facility where she is housed. The court is without authority to waive the exhaustion of administrative remedies or the 30-day waiting period, as suggested by Hughes. *See Alam*, 960 F.3d at 832 ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the

4

exhaustion requirements under § 3582, [her] motion is not ripe for review, and the Court is without jurisdiction to grant it."); *United States v. Garcia-Mora*, No. CR 18-00290-01, 2020 WL 2404912, at *2 (W.D. La. May 12, 2020) ("Section 3582(c)(1)(A) does not provide [the court] with the equitable authority to excuse [the defendant's] failure to exhaust [her] administrative remedies or to waive the 30-day waiting period."); *United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *2 (W.D. La. Apr. 20, 2020); *see also Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1857 (2016) ("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion.").  Accordingly, at this time, the court does not have the authority to grant the relief Hughes requests.  Moreover, even if she had complied with the exhaustion requirement before filing the present motion, nothing in her motion indicates that extraordinary and compelling reasons exist to reduce her sentence and release her from confinement.

Congress did not define "extraordinary and compelling."  Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission").  *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) ("USSG").  In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii)

the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission.  18 U.S.C § 3582(c)(1)(A).  The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2).

In the instant motion, Hughes, age 36, contends that she suffers from hypothroidism which affects the immune system and makes her vulnerable to COVID-19.  Hughes's claim of hypothroidism is consistent with her 2019 Presentence Investigation Report ("PSR") in which she advised Probation that she suffered from hypothyroidism and was treated with medication.  At the time, however, her medical records showed only that she took ibuprofen for knee pain.  Hughes also reported that she suffered from a cyst on her left leg in 2014 that led to a staph infection and abscess, which were subsequently removed and eventually healed.  Notably, these medical conditions did not prevent or impair her from continuing to engage in criminal activities for more than a decade.

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).  Probation reports, and her medical records confirm, that Hughes suffers from hypothyroidism, but it is controlled by medication, levothyroxine.  Moreover, as Probation points out, Hughes's lab results for February 26, 2020, indicate that her thyroid stimulating hormone [TSH] is within normal limits.  Her medical records disclose that on May 26, 2020, she was again prescribed a daily dosage of levothyroxine to treat her hypothyroidism.  Probation further relates, after conferring with medical staff, that "as of the most recent guidance, it does not appear there is an indication that people with thyroid disease are at a greater risk of getting COVID-19 or of being more severely affected should they be infected."  Probation confirmed to the court on August 13, 2020, that Hughes is classified as a Care Level 1 inmate, which means she is less than 70 years old and is generally healthy, but may have limited medical needs that can be managed easily by clinical evaluations every 6 to 12 months.  Thus, Hughes's medical summary does not meet the criteria listed in the USSG.  Her medical condition is not terminal and does not substantially diminish her ability to provide self-care.  As Probation reports, Hughes is ambulatory, and her medical records reveal that her work assignment is sanitation

orderly.  Hence, Hughes has failed to establish that a qualifying medical condition exists that would constitute extraordinary and compelling reasons to reduce her sentence.

Therefore, Hughes's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  *Id.* § 1B1.13 cmt. n.1(D).  Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present.  *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Hughes for any reason.  Moreover, in exercising its discretion, the court also finds that no extraordinary and compelling reasons exist in relation to Hughes's situation.  Probation reports that Hughes tested negative for COVID-19 on July 1, 2020, and was subsequently quarantined with other inmates

who also tested negative.  Additionally, the Government provided Hughes's medical records which indicate that Hughes was tested for COVID-19 on at least four occasions in July 2020, and she has been screened for COVID-19 on a continuous basis since April 2020.  As of August 13, 2020, the figures available at www.bop.gov list 13 inmates and 2 staff members at FMC Carswell as currently positive for COVID-19.  The figures also indicate that 530 inmates and 1 staff member have recovered, while 4 inmates have succumbed to the disease.  Therefore, although Hughes expresses legitimate concerns regarding COVID-19, she does not establish that the BOP cannot manage the outbreak within her correctional facility or that the facility is specifically unable to treat her, if she were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020))); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify [her] prison sentence because [s]he "does not meet any of the criteria set forth by the statute" and [s]he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification").  Furthermore, contracting the virus while incarcerated, even in conjunction with

9

preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19). Thus, Hughes has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to reduce her sentence.

The court further finds that compassionate release is not warranted in light of the applicable factors set forth in § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020). Hughes's offense of conviction entails her participation in a drug trafficking conspiracy in which she was held responsible for distributing between 15 and 45 kilograms of a mixture or substance containing a detectable amount of methamphetamine or between 1.5 and 4.5 kilograms of methamphetamine (actual). Hughes's role in the offense was to supply coconspirators with kilogram quantities of methamphetamine from various sources, which was imported from Mexico, for further distribution to others in the Eastern and Northern Districts of Texas. She was found to be in possession of 2 bags containing 42.44 grams of methamphetamine concealed in her pants at the time of her arrest. Hughes's criminal history includes prior convictions for possession of a controlled substance (methamphetamine), aggravated driving under the influence, failure to identify (2), organized retail theft, possession of drug paraphernalia (2), driving without a license (2), and possession of a controlled substance (hydrocodone). She also failed to comply with previous terms of probation, used both marijuana

and methamphetamine on a daily basis until her arrest, and admitted in a previous motion to being

an addict.  In addition, to date, Hughes has served only 13.2% of her 235-month sentence of

imprisonment.  Thus, under the circumstances, the court cannot conclude that Hughes would not

pose a danger to the safety of any other person or to the community, if released from confinement.

Moreover, the BOP has instituted a comprehensive management approach that includes

screening, testing, appropriate treatment, prevention, education, and infection control measures

in response to COVID-19.  In response to a directive from the United States Attorney General in

March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors,

as described by the Centers for Disease Control and Prevention, for the purpose of determining

which inmates are suitable for placement on home confinement.  *See Collins*, 2020 WL 1929844,

at *3.  The BOP notes that inmates need not apply to be considered for home confinement, as this

is being done automatically by case management staff.  To date, the BOP has placed 7,465 inmates

on home confinement.  The March 2020 directive is limited to "eligible at-risk inmates who are

non-violent and pose minimal likelihood of recidivism and who might be safer serving their

sentences in home confinement rather than in BOP facilities."  *United States v. Castillo*, No. CR

2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020).  The BOP has the exclusive

authority to determine where a prisoner is housed; thus, the court is without authority to order

home confinement.  18 U.S.C. § 3621(b); *Castillo*, 2020 WL 3000799, at *3; *see United States

v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020)

("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to

home confinement.").

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates. He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if [s]he were to be released is how [s]he behaved in the past, and [her] track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020)). Here, Hughes's track record is similarly a poor one.

In short, Hughes has failed to satisfy her burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*,

12

2020 WL 1940570, at *4-5 (same).  As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 2020 WL 1940570, at *5.

III.    Conclusion

In accordance with the foregoing analysis, Hughes's Motion for Compassionate Release Persuant [sic] to COVID-19 Compelling and Extraordinary Circumstances Under 18 U.S.C. 3582(c)(1)(A) (#1069) is DENIED.

SIGNED at Beaumont, Texas, this 14th day of August, 2020.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE