| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| *versus* § | CASE NO. 4:18-CR-46(25) |
| § | |
| STEPHANIE CHRISTINE HUGHES § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Stephanie Christine Hughes's ("Hughes") *pro se* Motions for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A) (#s 1257, 1339), wherein Hughes once again[1] seeks a reduction of her sentence, this time based on family circumstances. Specifically, Hughes states that she is the only available caregiver for her father and grandparents.[2] The Government has a filed a response in opposition (#1341). United States Probation and Pretrial Services ("Probation") has prepared a report for the court and recommends denying the motions. Having considered the motions, the submissions of the parties, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motions should be denied.

I.   Background

On November 15, 2018, a federal grand jury in the Eastern District of Texas returned a three-count Fourth Superseding Indictment. Hughes was charged in Count One of the Indictment with participating in a Conspiracy to Possess with Intent to Manufacture and Distribute 500 grams or more of a mixture of substance containing a detectable amount of methamphetamine or 50

---

[1] Hughes has filed three prior motions for compassionate release (#s1053,1069, 1203), all of which the court denied (#s 1068, 1093, 1223).

[2] Hughes's motions maintain that she is needed to help care for her father, grandmother, and grandfather, Paul Hawkins ("Paul"). Hughes's correspondence to the court, dated January 4, 2026, however, explains that Paul passed away in December 2025 (#1350). Accordingly, the court will only assess Hughes's motions with respect to her need to serve as caregiver to her father and grandmother.

grams of more of methamphetamine (actual) in violation of 21 U.S.C. § 846. On May 2, 2019, Hughes pleaded guilty to Count One of the Fourth Superseding Indictment pursuant to a non-binding plea agreement. On September 13, 2019, the court sentenced Hughes to 235 months' imprisonment, followed by a 5-year term of supervised release.

Hughes previously moved for compassionate release by motions filed May 4, 2020 (#1053), July 15, 2020 (#1069), and January 26, 2022 (#1203), all of which were denied by the court (#s 1068, 1093, 1223). Hughes's prior motions cited her alleged need to care for her children and other family members, including her father, as well as her own health concerns. Hughes's pending motions (#s 1257, 1339) are also based on family circumstances.

Hughes, age 41, is currently housed at Federal Medical Center Carswell in Fort Worth, Texas ("FMC Carswell"). Her projected release date is March 2, 2034.

II.   Compassionate Release

   A.   Controlling Law

A judgment of conviction that imposes a sentence of imprisonment is a "'final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *accord Freeman v. United States*, 564 U.S. 522, 526 (2011); *see* 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) embodies a rare exception to a conviction's finality. This statute gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment. The First Step Act of 2018 ("the Act"), Pub. L. No. 115-391, 132 Stat. 5194, in part, amended 18 U.S.C. § 3582(c)(1)(A), which currently provides:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all

>administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a)[3] to the extent that they are applicable, if it finds that—
>
>>(i) extraordinary and compelling reasons warrant such a reduction; or
>>
>>(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release." *See, e.g.*, *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this as 'compassionate release' because courts generally use it for prisoners with severe medical exigencies or infirmities.").

Rather than define "extraordinary and compelling reasons," Congress elected to delegate its authority to the United States Sentencing Commission ("Commission"). *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and

---

[3] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024), *abrogated on other grounds by United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025); *United States v. Jackson*, 27 F.4th 1088, 1090 (5th Cir. 2022); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). Although the Commission issued a policy statement prior to the passage of the Act that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the BOP—thus, the United States Court of Appeals for the Fifth Circuit and other courts held that it was inapplicable to motions filed by defendants on their own behalf. *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Effective November 1, 2023, the Commission—responding to, among other things, the Act—amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *See* U.S.S.G. § 1B1.13. Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." *Id*. § 1B1.13(b). These categories are:

(1)     the medical circumstances of the defendant;

(2)     the age of the defendant;

(3)      the family circumstances of the defendant;

(4)     whether the defendant was a victim of abuse while in custody;

(5)     other reasons similar in gravity to those previously described; and

(6)     an unusually long sentence.

*Id*. § 1B1.13(b)(1)-(6). The Fifth Circuit has clarified, however, that "prisoners have extraordinary and compelling reasons for relief 'only when they face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner.'" *Austin*, 125 F.4th at 692 (quoting *Escajeda*, 58 F.4th at 186).

As a result, a prisoner seeking compassionate release on her own motion must satisfy the following hurdles:

(1) the defendant must have exhausted her administrative remedies;

(2) "extraordinary and compelling reasons" must justify the reduction of her sentence or she must satisfy the requirements of § 3582(c)(1)(A)(ii);

(3) the reduction must be consistent with the Commission's applicable policy statements; and

(4) the defendant must convince the court to exercise its discretion to grant the motion after considering the § 3553(a) factors.

*Jackson*, 27 F.4th at 1089; *Shkambi*, 993 F.3d at 392; *accord United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022); *see Austin*, 125 F.4th at 692.

B. <u>Exhaustion</u>

Section 3582(c)(1)(A)'s plain language makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional, but that it *is* mandatory"). Accordingly, before seeking relief from the court,

a defendant must first submit a request to the warden of her facility to move for compassionate release on her behalf and then either exhaust her administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies. Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)).

Although this requirement is said to be mandatory, the Fifth Circuit has treated it as "a nonjurisdictional claim-processing rule." *Franco*, 973 F.3d at 468. "Mandatory but nonjurisdictional procedural filing requirements may be waived." *United States v. McLean*, Nos. 21-40015, 21-40017, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022); *see United States v. Harden*, No. 4:11-CR-127-SDJ, 2025 WL 562716, at *5 (E.D. Tex. Feb. 20, 2025). Therefore, if the Government fails to "invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief," that argument is deemed waived. *McLean*, 2022 WL 44618, at *1.

A defendant's motion for compassionate release must be based on the same circumstances as those raised in her request for release to the warden of the facility where she is housed. *United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020) (stating that "[i]n order to exhaust her administrative remedies, a prisoner must first present to the BOP the same grounds warranting release that the prisoner urges in her motion"); *accord United States v. York*, No. 4:07-CR-181-SDJ, 2025 WL 1397198, at *2-3 (E.D. Tex. May 14, 2025); *United States v. Thomas*, No. 4:19-CR-28-SDJ, 2023 WL 5279457, at *5 (E.D. Tex. Aug. 16, 2023) (citing *United States v. Mendoza-Garibay*, No. 4:13-CR-00281, 2023 WL 307459, at *1 (E.D. Tex. Jan. 18, 2023)). Hence, the facts asserted in an inmate's request to the warden and

in her motion for compassionate release must be consistent. *United States v. Scott*, No. CR 17-114, 2024 WL 2187849, at *2 (E.D. La. May 14, 2024); *see United States v. Gonzalez*, 849 F. App'x 116, 117 (5th Cir. 2021). Further, "the exhaustion requirement applies to new arguments or grounds for compassionate release developed after an earlier request for compassionate release." *United States v. Cantu*, No. 7:17-cr-01046-2, 2022 WL 90853, at *1 (S.D. Tex. Jan. 5, 2022) (citing *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020)); *accord Mendoza-Garibay*, 2023 WL 307459, at *2.

Here, the Government appears to invoke § 3582(c)(1)(A)'s exhaustion requirement, stating: "So when, as here, the government 'properly raise[s] the rule in the district court,' the requirement 'must' be enforced, such that the defendant 'cannot prevail on the merits.'" The Government does not further elaborate as to whether Hughes did or did not exhaust her administrative remedies. Hughes, however, contends that she has exhausted her administrative remedies. Hughes provides the court with a copy of her request for compassionate release addressed to the warden of FMC Carswell, Warden M. D. Smith, dated October 21, 2023 (#1347), wherein she requested release based on her family circumstances, specifically her need to provide care for her father and grandparents. In addition, Hughes has attached a letter from Warden Smith, dated October 23, 2023, denying her request for "Compassionate Release/Reduction In Sentence (RIS)" (#s 1257, 1347). Warden Smith noted that the criteria found in the BOP's Program Statement 5050.50 for a reduction in sentence based on the "Death or Incapacitation of the Family Member Caregiver" requires that such a request must include the death or incapacitation of the family member caregiver of the inmate's biological or legally adopted child or children. Warden Smith specifies that: "This criterion does not include the care

7

of an other family member." Thus, it appears that Hughes exhausted her administrative remedies with respect to her claim regarding her need to provide care for her father and grandparents. While Hughes may have complied with the exhaustion requirement before filing her motions for compassionate release, nothing in the motions indicates that extraordinary and compelling reasons exist to release her from confinement.

    C.    <u>Criteria for Release - Family Circumstances</u>

Hughes contends that her family circumstances present extraordinary and compelling reasons that justify compassionate release. With respect to a defendant's family circumstances, U.S.S.G. § 1B1.13(b)(3) provides that extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

> (A)     The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.
>
> (B)     The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (C)     The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
>
> (D)     The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "*immediate family member*" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3).

"Conclusory assertions that the defendant must now serve as the primary caretaker for a family member are insufficient." *United States v. Saunders*, No. 4:19-cr-68-28, 2025 WL 1550101, at *5 (E.D. Tex. May 30, 2025) (citing *United States v. Newman*, No. CR 122-031, 2024 WL 812041, at *2 (S.D. Ga. Feb. 27, 2024)). Rather, courts require specific evidence of the defendant's need to serve as a family member's primary caregiver. For example, "the defendant must prove with medical support that the family member is incapacitated." *Id.* (citing *United States v. Zermeno*, No. 1:16-CR-79(1), 2024 WL 4043445, at *4 (E.D. Tex. Sept. 3, 2024); *United States v. Romano*, 707 F. Supp. 3d 233, 237-38 (E.D.N.Y. Dec. 19, 2023)); *United States v. Duprey,* No. CR 10-00101 (RK), 2024 WL 3873938, at *2 (D.N.J. Aug. 19, 2024) ("Defendant has put forth little evidence that [his 84-year-old mother] suffers from an incapacitating medical condition requiring Defendant's care" and, therefore, "has not met his burden to show [his mother's] incapacitation." (citing *United States v. Yarbrough*, No. 2:06-CR00203-1, 2023 WL 8614050, at *3 (W.D. Pa. Dec. 13, 2023))).

In the context of § 1B1.13(b)(3), one is incapacitated, whether due to injury or illness, when he is "depriv[ed] of capacity or natural power," such that he is unable to provide self-care. *See Incapacitate*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/incapacitate; *see also United States v. Bautista*, No. 3:15-cr-02720-DMS, 2024 WL 3014637, at *3 (S.D. Cal. June 14, 2024) ("Generally, a person is incapacitated when he is 'completely disabled' and cannot care for himself."). Moreover, "[f]or guidance on what constitutes 'incapacitation,' courts have looked to [the BOP's] guidelines for handling inmate compassionate release requests." *United States v. Al Hunaity*, No. CR 18-723 (RBK), 2024 WL 982044, at *5 (D.N.J. Mar. 7, 2024); *see United States v. McCoy*, No. 25-6039, 2025 WL

9

2353013, at *3 (10th Cir. Aug. 14, 2025); *United States v. Rosario-Cruzado*, No. 24-6365, 2025 WL 1540932, at *2 (4th Cir. May 30, 2025). The BOP defines "incapacitation" as "a serious injury, or a debilitating physical illness and the result of the injury or illness is that the [individual] . . . is completely disabled, meaning that the [individual] . . . cannot carry on any self-care and is totally confined to a bed or chair." U.S. DEP'T OF JUST., FED. BUREAU OF PRISONS, PROGRAM STATEMENT 5050.50 (Jan. 17, 2019)); *accord United States v. Collins*, No. 15-10188-EFM, 2020 WL 136859, at *4 (D. Kan. Jan. 13, 2020); *see United States v. Crider*, No. 6:14-cr-00044-GFVT-HAI-1, 2024 WL 1291492, at *2 n.1 (E.D. Ky. Mar. 26, 2024); *United States v. White*, No. CR16-40, 2021 WL 1721016, at *4 (E.D. La. Apr. 30, 2021). The Program Statement also defines "incapacitation" as "[a] severe cognitive deficit (*e.g.*, Alzheimer's disease or traumatic brain injury that has severely affected the [individual's] mental capacity or function), but may not be confined to a bed or chair." U.S. DEP'T OF JUST., FED. BUREAU OF PRISONS, PROGRAM STATEMENT 5050.50 (Jan. 17, 2019)).

Hughes contends that her father, Billy Hughes ("Billy"), has been diagnosed with Stage 3 Cancer in his throat and tongue and that he also suffers from other health concerns. Hughes states that Billy has undergone three "major surgeries to remove cancer," and he can no longer speak. Hughes explains that Billy has numerous medical appointments that he must attend, but he is unable to drive himself. Hughes affirms that Billy lives with her grandmother, Helen Hawkins ("Helen"), in a separate house located on Helen's property. Hughes maintains that Helen is approximately 86 years old and unable to provide the care that Billy needs. Specifically, Helen has had two hip replacements and has trouble doing everyday tasks including driving. Hughes asserts that, if released, she would serve as a caregiver to her father and grandmother.

Probation confirms that Hughes's father, Billy, has been diagnosed with cancer for the third time and is constantly sick from chemotherapy. Probation advised, however, in 2024, that he does not need one-on-one care. According to Probation, Hughes's grandmother, Helen, suffered a stroke in 2022, but is healthy now, except for her blood pressure and cholesterol. Helen informed Probation that she cannot physically handle caring for Hughes's father. In addition, Probation verifies that Billy lives with Helen in Gordonville, Texas.

Here, the court need not determine whether Hughes's father and grandmother are "incapacitated," for the purposes of § 1B1.13(b)(3) because Hughes has not demonstrated that she is the only available caregiver for them. *See United States v. Lopez*, No. 23-50404, 2024 WL 244935, at *1 (5th Cir. Jan. 23, 2024) (noting that the defendant "failed to explain why his other siblings could not care for his parents"); *United States v. Bolton*, No. 4:15-CR-207-SDJ, 2025 WL 1520621, at *4 (E.D. Tex. May 22, 2025) ("Statements that a family member is elderly and needs care are insufficient. . . . The defendant must also demonstrate why they are the only available caregiver for that family member."); *United States v. Garcia*, No. H-21-162-01, 2024 WL 2114311, at *2 (S.D. Tex. May 10, 2024) (stating that the defendant failed to "establish that his mother has no other family members, such as brothers or sisters, who can assist with her care" and explaining that the defendant's "conclusory assertion that his wife is unavailable as a caregiver [did] not meet his burden of proof"); *United States v. Watson*, No. 4:18-CR-40018-KES-1, 2024 WL 1093757, at *3 (D.S.D. Mar. 13, 2024) ("Without evidence that [the defendant] is the only available caregiver, the court cannot determine whether [the defendant]'s family circumstances give rise to 'extraordinary and compelling reasons' for her release."); *Romano*, 707 F. Supp. 3d at 238 (commenting that it is not clear from the record that no other person can provide the

necessary care); *United States v. Yarbrough*, No. 2:06-CR-00203-1, 2023 WL 8614050, at *3 (W.D. Pa. Dec. 13, 2023) (given the defendant's close family group, the court found that the defendant was not the only person who could serve as his mother's caregiver, and "there was no testimony that obviated the facial availability of other family members as potential viable caregivers"); *United States v. Wrice*, No. 10-cr-40065-JPG-1, 2023 WL 4030067, at *3 (S.D. Ill. June 15, 2023) (reasoning that the defendant had not "met her burden" where she "provide[d] no statements from other family members, no affidavits or letters from medical professionals, and no other verifiable evidence to show that she is the only caretaker available or that [her] stepfather requires a caretaker"); *United States v. Moore*, No. 14-209-2, 2020 WL 7024245, at *5 (E.D. Pa. Nov. 30, 2020) (finding the prisoner did not demonstrate he was his mother's "only available caregiver" in light of his sister's living with his mother and a cousin living nearby, pointing out that although they might feel overwhelmed because they had full-time jobs, they did not state that they were incapacitated or physically unable to care for his mother).

Hughes's Presentence Investigation Report ("PSR") lists five siblings, including one half-sister who lives in Gordonville, Texas. Hughes confirms that she has five sisters but notes that only three of them "are [her] father's" and "2 of which are still struggling with addiction and are not stable to provide care for [her] father." Hughes further contends that she has "a sister in the area as well as an uncle," but contends that "they are not willing and not able to be there as much as they are needed." In addition, Hughes states that her family "does not have money to place anyone in a nursing home or any assisted living."[3] Although Hughes seems to discount the ability of her family members who live in Gordonville to serve as a caregiver for her father and

---

[3] Probation reports that Billy is receiving Social Security Disability Income.

12

grandmother, the court cannot conclude that they would not be willing to serve as a caretaker (or hire others to fill this role). *See United States v. Burden*, No. 3:00-CR-00263, 2024 WL 94402, at *3 (D. Conn. Jan. 8, 2024). In addition, the PSR notes that Hughes has at least one adult child, Dylan Davis ("Dylan"). Hughes does not address Dylan's ability to serve as a caregiver for his grandfather or great-grandmother.

Furthermore, Hughes, age 41, has not shown that she would be a suitable caretaker for her father and grandmother if she were to be released. As discussed below, Hughes has a lengthy criminal history, as well as a history of poly-substance abuse. Moreover, according to Hughes's PSR, she has suffered from depression and anxiety for years. In addition, the PSR notes that on April 26, 2011, she was involved in an assault where she was also intoxicated: "During the altercation, she grabbed a piece of broken glass, held it against her neck, and threatened to harm herself." Hughes has a very limited employment history, and she was terminated from the only job she held for more than a year for being unreliable.

Hence, under the facts of this case, Hughes has not shown that her family circumstances provide an extraordinary and compelling reason for her early release from prison.

D. Section 3553(a) Factors

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Chavez*, No. 23-50684, 2024 WL 940263, at *1 (5th Cir. Mar. 5, 2024); *Rollins*, 53 F.4th at 358-59; *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *United*

13

*States v. Keys*, 846 F. App'x 275, 276 (5th Cir. 2021); *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020). Section 3553(a)(1) requires the court to consider the nature and circumstances of the defendant's offense of conviction as well as the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). Here, neither the nature of Hughes's offense nor her history and characteristics warrant a sentence reduction.

Hughes's offense of conviction entails her participation in a large scale, international drug trafficking conspiracy involving a Mexican drug cartel in which she was held responsible for distributing between 15 and 45 kilograms of a mixture or substance containing a detectable amount of methamphetamine or between 1.5 and 4.5 kilograms of methamphetamine (actual). Hughes's role in the offense was to supply coconspirators with kilogram quantities of methamphetamine from various sources, which were imported from Mexico, for further distribution to others in the Eastern and Northern Districts of Texas. She was found to be in possession of 2 bags containing 42.44 grams of methamphetamine concealed in her pants at the time of her arrest. Hughes has an extensive criminal history, which includes prior convictions for possession of a controlled substance (methamphetamine), aggravated driving under the influence, failure to identify (2x), organized retail theft, possession of drug paraphernalia (2x), driving without a license (2x), and possession of a controlled substance (hydrocodone). In addition, Hughes has multiple other arrests for possession of marijuana, driving while license invalid (2x), possession of drug paraphernalia, and assault causing bodily injury. Moreover, Hughes has failed to comply with prior terms of probation. In short, Hughes's "criminal history and conduct reflect an unabated propensity for

crime." *United States v. Padilla*, No. H-14-174-1, 2021 WL 1517855, at *5 (S.D. Tex. Apr. 16, 2021).

Hughes also has a long history of substance abuse. According to her PSR, Hughes reported smoking marijuana daily from age 12 until her arrest for the offense of conviction. Hughes also stated that she consumed alcohol "off and on" beginning at age 16. Additionally, Hughes admitted to smoking and injecting methamphetamine daily from age 22 until her arrest. Finally, Hughes conceded that she had previously abused ecstasy and hydrocodone.

In addition, granting Hughes compassionate release would fail to provide just punishment for her offense and promote respect for the law. In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence. 948 F.3d at 694. The district court determined that the defendant's terminal illness "constitute[d] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Id.* at 694; *see Rollins*, 53 F.4th at 359-60; *Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"); *accord United States v. Rodriguez*, 27 F.4th 1097, 1100 (5th Cir. 2022). In the case at bar, releasing Hughes after she has served only approximately 92 months of her 235-month

sentence would similarly minimize the impact of her crime and the seriousness of her offense as well as fall short of providing just punishment and adequate deterrence to criminal conduct.

On balance, compassionate release is not warranted in light of the applicable factors set forth in § 3553(a). As the court noted in *United States v. Preston*, "[t]he best predictor of how [the defendant] will behave if he were to be released is how he has behaved when released in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, Hughes's track record is similarly a poor one. Like the court in *United States v. Lewis*, this court concludes that "Defendant's current term of imprisonment was and remains appropriate." No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021). Hughes committed a serious offense that justified her sentence, and the circumstances she identifies do not render that sentence unjust or inequitable. *See id.*

III. Conclusion

In sum, Hughes has failed to satisfy her burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. The 235-month sentence of imprisonment imposed upon Hughes for her offense of conviction comports with the 18 U.S.C. § 3553(a) factors, and she has adduced no extraordinary and compelling reasons to lessen her sentence or justify her release from prison. Hughes's family circumstances do not merit a reduction of sentence under these circumstances.

SIGNED at Beaumont, Texas, this 9th day of February, 2026.

*Marcia A. Crone*
_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE